# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| VINCENTE BENITEZ, | ) | CASE NOS. 1:11CV728; 1:09CR363 |
|  | ) |  |
| PETITIONER, | ) | JUDGE SARA LIOI |
|  | ) |  |
| vs. | ) |  |
|  | ) | OPINION AND ORDER |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| RESPONDENT. | ) |  |

Before the Court is a motion by Petitioner Vincente Benitez (Petitioner) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Case. No. 1:11CV728, Doc. No. 1; Case No. 1:09CR363, Doc. No. 568.)[1] The government has filed a brief in opposition to Petitioner's motion. (Doc. No. 570.)

Petitioner was indicted August 12, 2009, on one count of conspiracy to possess with intent to distribute heroin, cocaine, and cocaine base; one count of possession with the intent to distribute cocaine; seventeen counts of use of a telephone to facilitate drug trafficking; and one count of travel in interstate commerce to promote drug trafficking. (Doc. No. 1.) On November 13, 2009, pursuant to a plea agreement, Petitioner pleaded guilty to only one count—conspiracy to possess with intent to distribute heroin, cocaine, and cocaine base. (Doc. No. 398.) All other counts of the indictment were ultimately dismissed, and Petitioner was sentenced to 108 months'

---

[1] "Doc. No." references throughout the remainder of this opinion refer exclusively to the numbers assigned in Case No. 1:09CR363.

imprisonment, five years' supervised release, and a $100 special assessment. (Doc. No. 514.)

Petitioner now challenges his sentence under 28 U.S.C. § 2255, asserting four grounds for relief. First, Petitioner contends that he was denied effective assistance of counsel when his counsel allegedly failed to negotiate a favorable plea agreement and did not adequately explain the nature and consequences of the plea agreement to Petitioner. Second, Petitioner asserts that his counsel was ineffective in not seeking—and the Court in error in not granting—a three-level Sentencing Guidelines reduction for acceptance of responsibility. Third, Petitioner asserts that the determination as to the quantity of drugs involved in his offense was improperly made and that his counsel was ineffective in failing to challenge this error. Last, Petitioner claims he was entitled to a downward departure in the application of the Sentencing Guidelines because of his status as an "illegal alien." (Doc. No. 568, p. 15.)

When a petitioner files a § 2255 motion, the sentencing court should hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). "[N]o hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

The Court finds that a hearing is not warranted in the present case. As the analysis below demonstrates, many of the claims made in Petitioner's motion are barred

by the terms of his plea agreement. Those claims that are not barred by that agreement are conclusively refuted by the robust record in this case.

**I. Preclusive Effect of Waiver of Right to Appeal**

As part of his plea agreement, Petitioner expressly waived his right to appeal, including his right to "a proceeding under 28 U.S.C. § 2255." (Doc. No. 398, p. 8.) The expansive waiver agreed to by Petitioner included only four exceptions. Petitioner reserved his right to pursue appeals only in regard to (1) "any punishment in excess of the statutory maximum," (2) "any sentence to the extent it exceeds the greater of any statutory mandatory minimum sentence or the maximum of the guideline range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations" found in the plea agreement, (3) claims of ineffective assistance of counsel, and (4) claims of prosecutorial misconduct. (Doc. No. 398, pp. 8–9.)

"A defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Sharp*, 442 F.3d 946, 949 (6th Cir. 2006) (quoting *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005)). This includes waiver of the right to appeal, "so long as the waiver is made knowingly and voluntarily." *United States v. Walls*, 390 F. App'x 545, 548 (6th Cir. 2010) (citing *United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2007)). The Sixth Circuit Court of Appeals looks to both the plea agreement and the plea colloquy to determine the validity of such a waiver. *Walls*, 390 F. App'x at 548 (citing *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004)).

The terms of the plea agreement here are unequivocal. Petitioner waived all appellate rights save the four exceptions enumerated above. The transcript of the plea colloquy also reflects that Petitioner entered into the plea agreement knowingly and voluntarily. The Court repeatedly verified with Petitioner that Petitioner—a Spanish speaker who was provided a certified court interpreter—did indeed understand the details of the proceedings and the plea agreement. (Doc. No. 563, pp. 10, 11, 14.) The Court reviewed the terms of the plea agreement with Petitioner section-by-section. Petitioner indicated he understood that, with the exception of the four enumerated reservations, he was "giving up all other rights to appeal or collaterally attack through this or in any other proceeding [his] sentence and conviction in this case." (*Id.*, p. 33.) Petitioner also acknowledged that he had thoroughly discussed the plea agreement with his counsel (*Id.*, p. 39), that no one had in any way coerced him to enter his plea (*Id.*, p. 40), and that he fully understood the terms of the plea agreement (*Id.*). Petitioner's waiver of his appellate rights was thus knowing and voluntary and, as such, precludes him from raising, under the guise of a § 2255 claim, any issues that fall outside of the four exceptions enumerated in the plea agreement.

Petitioner makes a variety of factual and legal claims in the Memorandum in Support of his § 2255 motion. None of these claims, however, fall within the statutory maximum; statutory mandatory minimum or Guidelines maximum; or prosecutorial misconduct exceptions to the appeals waiver found in the plea agreement.[2] Only the

---

[2] Petitioner does allege, almost in passing, "outrageous . . . Government conduct" that included "misleading by the prosecution" and "malicious prosecution." (Doc. No. 568, pp. 5–6.)  But Petitioner fails to elaborate on these allegations at all, let alone provide specific facts to support the allegations.

ineffective assistance exception overlaps with any of Petitioner's claims. As such, Petitioner's claims for § 2255 relief will be considered only to the extent that they implicate his right to effective assistance of counsel.

**II. Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are analyzed under the familiar *Strickland* standard. Under *Strickland*, in order to succeed on such a claim, a defendant must make two showings. First, he "must show that his counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance means that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must also show that "the deficient performance prejudiced the defense." *Id.* The errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In the context of a guilty plea, the second showing is altered slightly, as defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

When a defendant challenges the validity of a guilty plea, representations of the defendant, his lawyer, and the prosecutor at the plea hearing and the findings made by the judge at such a hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* at 74.

"[C]onclusory allegations unsupported by specifics" and "contentions that in the face of the record are wholly incredible" are subject to summary dismissal. *Id.*

### A. Failure to Negotiate a Favorable Plea Agreement and Failure to Adequately Explain the Plea Agreement

Petitioner contends that his counsel failed to negotiate a favorable plea agreement and failed to adequately explain to Petitioner the nature and consequences of the plea agreement. As to the first point, the thrust of Petitioner's argument appears to be that, when it came to the plea agreement, Petitioner, through his counsel, gave up too much for too little in return. Petitioner points to his waiver of appellate rights and his cooperation with the government and asserts that, had counsel been competent, Petitioner would have obtained a more favorable plea agreement. (Doc. No. 568, pp. 7–8.)

In fact, the plea agreement contained multiple provisions favorable to Petitioner. Foremost among these was the government's agreement to seek dismissal of one count of possession with the intent to distribute cocaine; seventeen counts of use of a telephone to facilitate drug trafficking; and one count of travel in interstate commerce to promote drug trafficking. These charges were ultimately dismissed by the Court. (Doc. No. 547, p. 49.) The agreement further provided that the government would move the Court for a six-level reduction in Petitioner's base offense level if Petitioner fully cooperated with the government. The government followed through on this commitment, and the Court granted a six-level reduction based on Petitioner's assistance to law enforcement. (*Id.*, p. 32.)  This resulted in a substantial reduction in the advisory sentencing range—from 168–210 months (Criminal History Category I and Offense

6

Level 35) to 87–108 months (Criminal History Category I and Offense Level 29). The agreement also provided that, if Petitioner's conduct "continue[d] to reflect his acceptance of responsibility," the government would notify the Court of Petitioner's timely indication of his intent to plead guilty and would recommend a corresponding three-level reduction. (Doc. No. 398, p. 5.) This reduction ultimately was not applied, a fact addressed in more detail below.

Petitioner's further contention that defense counsel failed to adequately explain the plea agreement flies in the face of the record. At the change of plea hearing, Petitioner affirmed that he had discussed the plea agreement thoroughly with his counsel and that he was fully satisfied with his counsel's services and advice. (Doc. No. 563, pp. 39–40.) Likewise, counsel confirmed that, though it was a "painful, slow process," he did in fact go over "every word" of the plea agreement with Petitioner. (*Id.*, p. 8.) When asked by the Court if he felt "comfortable in saying that [his] client ha[d] a clear understanding of . . . the information that is contained in the plea agreement," Petitioner's counsel replied, "Very comfortable." (*Id.*, p. 8–9.) And when the Court went through the agreement section-by-section, Petitioner affirmed that he understood each section, thus indicating that his counsel had carefully explained the plea agreement to him.

**B. Failure to Seek an Acceptance-of-Responsibility Reduction**

Petitioner also contends that his counsel failed to properly seek a three-level reduction for acceptance of responsibility.[3] The record belies this assertion. In fact, Petitioner's counsel was adamant in pressing the Court for an acceptance-of-responsibility reduction. Counsel sought such a reduction in Petitioner's sentencing memorandum as well as at the sentencing hearing. Counsel also went to substantial lengths during that hearing to convince the Court that, notwithstanding Petitioner's statements regarding being cajoled into the drug trade by law enforcement, Petitioner had indeed accepted full responsibility for his conduct. (Doc. No. 547, pp. 8–12.)

At the sentencing hearing, the Court inquired of Petitioner directly to determine whether Petitioner had in fact accepted responsibility. (*Id.*, p. 12–14.) The Court then heard extensive testimony from two law enforcement officers involved in the case in an effort to better assess the veracity of Petitioner's assertions of law enforcement coercion. (*Id.*, pp. 16–28.) Only after giving Petitioner a second opportunity to explain his position did the Court ultimately determine that Petitioner had not accepted responsibility. (*Id.*, p. 29.) Even after all this, Petitioner's counsel continued to maintain his objection to the Court's determination that Petitioner had not accepted responsibility and was thus not entitled to a corresponding three-level reduction. (*Id.*, p. 34.)

---

[3] As Petitioner notes, pursuant to § 3E1.1 of the Sentencing Guidelines, the three-level acceptance-of-responsibility reduction would actually be a two-level reduction for acceptance of responsibility coupled with a one-level reduction for timely notice to the government of Petitioner's intent to plead guilty.
   In addition to his ineffective assistance argument, Petitioner also contends that the Court itself erred in refusing to grant the acceptance-of-responsibility reduction. But as already discussed, Petitioner has waived any rights he may have had to address this issue. Regardless, "a district court's findings" as to whether a defendant is entitled to a reduction for acceptance of responsibility "will be given great deference . . . and a challenge will be successful only in extraordinary circumstances." *United States v. Downs*, 955 F.2d 397, 400 (6th Cir. 1992).

### C. Failure to Challenge the Method by Which the Quantity of Drugs Attributed to Defendant was Determined

Petitioner asserts that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and subsequent case law, he was entitled to a jury determination as to the quantity of drugs attributed to him. Alternatively, Petitioner contends that the Court violated the rule applied in *United States v. Colon-Solis*, 354 F.3d 101 (1st Cir. 2004), requiring that, in situations where a conspiracy participant has entered a guilty plea, the court must make a finding as to the quantity of drugs attributable to the particular defendant.

Petitioner has, by virtue of the terms of his plea agreement, waived his right to raise such claims now. But Petitioner also contends that his counsel was ineffective in failing to previously assert these rights on Petitioner's behalf. Because the merits of Petitioner's ineffective assistance claims depend in part on the validity of his drug quantity determination claims, the latter must be addressed despite petitioner's waiver.

In his plea agreement, petitioner explicitly waived his right to jury trial *and* expressly agreed that, had the case proceeded to trial, the government could have proved beyond a reasonable doubt that Petitioner himself had possessed and distributed the quantity of drugs specified in the plea agreement. (Doc. No. 398, p. 11–12.) Defendant thus waived his right to a jury determination of the quantity of drugs involved in his offense, and *Apprendi* therefore was not implicated. *United States v. Leachman*, 309 F.3d 377, 378 (6th Cir. 2002) (*Apprendi* not implicated where defendant had "knowingly and voluntarily waived his rights to a jury and to proof beyond a reasonable doubt[] in regard to the amount of drugs" involved in his manufacturing of marijuana

9

charge); *see also Blakely v. Washington*, 542 U.S. 296, 310 (2004) (citations omitted) ("When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding."). Further, the Court confirmed the quantity of drugs involved with Petitioner during his change of plea hearing. (Doc. No. 563, p. 20.)

*Colon-Solis* is also no help to Petitioner. The Sixth Circuit has held, in a case where a defendant pleaded guilty to involvement in a drug conspiracy and admitted the amount of drugs involved, that such "admission obviates the need for the 'further fact-finding' required by *Colon-Solis*." *United States v. Anderson*, 333 F. App'x 17, 27 (6th Cir. 2009).

Petitioner's claims that the Court committed error in determining the quantity of drugs attributable to him are without merit, and Petitioner's counsel, therefore, was not ineffective in failing to raise such arguments. *See Krist v. Foltz*, 804 F.2d 944, 945–46 (6th Cir. 1986) (Counsel has no duty to present a baseless claim.).

### D. Downward Sentencing Guidelines Departure Due to Petitioner's Illegal Alien Status

Petitioner finally claims that he should have received a downward departure in his Sentencing Guidelines offense level because of his status as an "illegal alien." (Doc. No. 568, p. 15.) Unlike the other claims made in his § 2255 petition, however, Petitioner does not attribute his failure to receive such a departure to the ineffective assistance of counsel. Nor does the Court see how such "omissions" by counsel could constitute ineffective assistance. *See Garcia v. United States*, No. 99-1134,

2000 WL 145358, at *1 (6th Cir. Feb 2, 2000) (rejecting claim of ineffective assistance of counsel where counsel failed to move for downward departure due to illegal alien status). In fact, the Sixth Circuit has expressly declined to decide whether deportable alien status can even be the basis for a downward departure in a crime not itself dependent on alien status. *United States v. Mendez*, 362 F. App'x 484, 488 n.4 (6th Cir. 2010). As Petitioner's claim thus does not involve an exception to his waiver of appellate rights, it may not be entertained. *See U.S. v. Silva-Rodriguez*, 29 F. App'x 348, 349 (6th Cir. 2002) (refusing to entertain defendant's claim of abuse of discretion in denial of illegal alien status-based downward departure where defendant had waived right to appeal unless sentence exceeded the statutory maximum).

For the reasons set forth above, Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

**IT IS SO ORDERED**.

Dated: October 18, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**